UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 15-cr-1299-GPC |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |
| v. | |
| PETER JACOB DANN, | **[ECF No. 261, 278]** |
| Defendant. | |

Defendant Peter Jacob Dann ("Dann") has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c).[1] ECF Nos. 261, 269. The Government opposes. ECF No. 274 ("Opp."). Defendant filed a reply. ECF No. 275. For the reasons that follow, Defendant's motion is DENIED.

**I.    BACKGROUND**

Dann was convicted by guilty plea of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846. ECF Nos. 106; 202. Dann was sentenced to

---

[1] Dann initially submitted to the Court his Bureau of Prison health records along with a *pro se* motion for compassionate release. ECF No. 261. The Court then appointed counsel to assist Dann in seeking compassionate release. ECF No. 262.

1

a term of imprisonment of 120 months, to be followed by 5 years of supervised released. ECF No. 202. Defendant is presently imprisoned at the Lompoc Federal Correctional Complex (hereinafter "FCC Lompoc"). As of October 2020, Peter Dann had served about 65 months, approximately 54 percent of his sentence.

Dann is 48 years old, suffers from Type-2 Diabetes and obesity, and has a history of hypertension. ECF No. 146 ("PSR") at 3, 14; ECF No. 273, Ex. A. In early May, Dann tested positive for COVID-19 while in custody at FCC Lompoc. ECF No. 73, Ex. A. On May 21, 2020, the Bureau of Prison (hereinafter "BOP") determined Dann recovered from COVID-19 and recorded his case as "resolved." *Id.* Dann additionally suffers discomfort from a persistent shoulder injury, and is blind in one eye and has low vision in the other eye and needs cataract surgery. *Id.*

## II. DISCUSSION

Dann now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Dann has satisfied the administrative exhaustion requirement, and second, whether Dann has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL

806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies, or, 30 days have lapsed from the receipt of a request for compassionate release by the warden, whichever is earlier. On May 26, 2020, June 2, 2020, and June 23, 2020, Dann submitted administrative requests for compassionate release to the Warden of FCC Lompoc. ECF No. 269, Ex. B. On August 5, 2020, the Warden denied Dann's request. *Id.*, Ex. C. The Government asks the Court to deny release for failure to exhaust administrative remedies, but fails to support this request with any argument. Opp. at 13. Accordingly, the Court finds that Dann has met the exhaustion requirement under Section 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or ...
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

### i. Medical Conditions

Dann argues that because he suffers from Type-2 Diabetes, obesity, and hypertension, he is at greater risk of developing a serious illness if reinfected with COVID-19. ECF No. 269 at 8-10. The Government acknowledges that Dann presents multiple risk factors identified by the CDC as heightening the risk of severe injury as a result of COVID-19 and concedes that Dann's health condition presents "a serious physical or medical condition. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." Opp. at 10 (quoting Sentencing Guidelines § 1B1.13, cmt. n. 1(A)(ii)).

The Court finds that Peter Dann has shown he is at increased risk of suffering a serious illness or death if Dann were reinfected with COVID-19. The CDC has warned that individuals who suffer from diabetes are at higher risk of becoming severely ill from COVID-19, and those with hypertension may be at greater risk. *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Nov. 1, 2020). Additionally, COVID-19 has been found to trigger severe reactions in patients with diabetes and hypertension, making them more likely to develop severe symptoms from infection than healthy individuals. *See Report of the WHO-China Joint*

*Mission on Coronavirus Disease 2019 (COVID-19),* World Health Organization, at 12 (Feb. 16-24 2020), https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf; Matteo Apicella et. al., *COVID-19 in People with Diabetes: Understanding the Reasons for Worse Outcomes*, 8 LANCET 782, 789 (Sept. 1, 2020), https://www.thelancet.com/journals/landia/article/PIIS2213-8587(20)30238-2/fulltext. Accordingly, courts have repeatedly granted compassionate release for individuals with diabetes and hypertension. *United States v. Cazessus*, No. 19CR1050-CAB, 2020 WL 6081736, at *3 (S.D. Cal Oct. 15, 2020); *United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *4 (E.D. Cal July 7, 2020).

Additionally, the CDC has recognized obesity as a risk factor for a severe or fatal case of COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 13, 2020). The CDC defines obesity as "a body mass index (BMI) of 30 or above." *Id.* At the time of the Pre-Sentence Report, Dann, who is 5 feet 11 inches, weighed 260 pounds. PSR at 3. Using a standard adult BMI calculator, this results in a BMI of 36.3. Dann's most recent weight was 254 pounds, resulting in a BMI of 35.4. ECF No. 273, Ex. A. Recognizing obesity as a risk factor for severe illness from COVID-19, district courts have granted compassionate release for individuals with this condition. *See, e.g.*, *United States v. Fernandez*, No. 2:16-CR-00115-KJM, 2020 WL 5909490 (E.D. Cal. Oct. 6, 2020); *United States v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812242, at *1 (N.D. Cal. Apr. 9, 2020).

Accordingly, the Court agrees that Dann presents risk factors that would increase his risk of serious illness from COVID-19.

\ \ \

\ \ \

### ii. Reinfection

The Court notes that Dann has already contracted COVID-19, which may affect the analysis of whether his medical conditions present extraordinary and compelling reasons for release. Dann argues that although he already recovered from an asymptomatic case of COVID-19, he is still at risk of reinfection, particularly given his underlying medical conditions. ECF No. 269 at 11-12. The Government concedes that Dann's medical conditions presents a risk factor and does not make any arguments as to whether Dann's prior COVID-19 diagnosis affects the 'extraordinary and compelling reasons' analysis. Opp. at 10.

Ultimately, the fact that Dann tested positive for COVID-19 and was asymptomatic weighs slightly against his release. Several courts have denied compassionate release when a defendant has not suffered any severe symptoms from a COVID-19 diagnosis, despite underlying medical issues. *United States v. Risley*, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *7 (E.D. Cal. Aug. 17, 2020); *United States v. Smith*, No. 2:13-cr-775 DB, 2020 WL 5107635, at *4 (D. Ut. Aug. 31, 2020). Although the Court notes that there is still scientific uncertainty surrounding reinfection and how long COVID-19 immunity lasts, current research indicates that reinfection is possible, but very rare. *See* Apoorva Mandavilli, *Coronavirus Reinfections Are Real but Very, Very Rare*, N.Y. Times, Oct. 13, 2020, https://nytimes.com/2020/10/13/health/coronavirus-reinfection.html ("More than 38 million people worldwide have been infected with coronavirus, and . . . fewer than five of those cases have been confirmed by scientists to be reinfections."). Accordingly, although the Court does not rule out the possibility that Dann could be reinfected with COVID-19 while at FCC Lompoc, it finds that the apparent rarity of reinfection coupled with Dann's asymptomatic case weigh slightly against release.

\ \ \

### iii. Conditions at FCC Lompoc

Dann argues the BOP is unable to provide adequate care for inmates during this pandemic, as evidenced by the COVID-19 outbreak at FCC Lompoc. ECF No. 269 at 13-18. The Government argues BOP has implemented numerous measures designed to mitigate the risks of COVID-19 transmission. Opp. at 5. As of October 29, 2020, the facility where Dann is located, FCC Lompoc, had reported no confirmed active inmate cases. *COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 29, 2020). Although the Court notes that FCC Lompoc is no longer the site of a COVID-19 outbreak, due to the highly contagious nature of the virus, the virus could be easily reintroduced and quickly spread. *See* Timothy Williams, et. al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html. Accordingly, the Court finds that the fact that the COVID-19 outbreak at FCC Lompoc has subsided does not weigh against Dann's release.

### C.  Public Safety and Section 3553 Sentencing Factors

The factors outlined in Sections 3553 and 3582 also require consideration of public safety, the need for just punishment of the offense, and the likelihood that a reduction would lead to unwarranted sentencing disparities. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). Dann's underlying offense, conspiracy to distribute methamphetamine, was nonviolent. *United States v. Mondaca*, 89-CR-0655 DMS, 2020 WL 1029024, at *4 (S.D.Cal. Mar. 3, 2020) (finding conspiracy to possess cocaine with intent to distribute was "a non-violent drug offense"). And although Dann has a lengthy criminal history, which includes offenses for DUI, auto theft, burglary, and possession of a controlled substance, each of his offenses have been nonviolent. *See* PSR at 8-13; *United States v. York*, No. 3:11-CR-76, 2019 WL 324166, at *7 (E.D. Tenn. July 18, 2019) (finding

defendant convicted of drug offense did not present a danger because his "criminal history does not involve violence"). Additionally, the Court notes his criminal history was largely driven by his drug addiction and is further contextualized by his history of childhood physical abuse. PSR at 14. Dann was the first member of the conspiracy to accept responsibility and take the government's offer and Dann did not make a significant amount of money from his participating in the conspiracy. ECF No. 266 at 14. Furthermore, since his arrest, Dann has remained sober, and he has outlined a plan to live with his grandmother prior to his entry into a residential rehabilitation program upon his release. These factors weigh in favor of Dann's release. *United States v. Jones*, No. 4:17-CR-00047, 2020 WL 5709281, at *4 (M.D. Pa. Sept. 24, 2020) (granting release despite defendant's lengthy criminal history, because the history was driven by a drug addiction and defendant was now entirely sober).

Although the Court commends Dann for his sobriety and recognizes the nonviolent nature of both the underlying offense and Dann's criminal history, as well as his outlined release plans, the Court is not convinced that these factors outweigh the potential danger to the community or the need for his sentence to reflect the severity of his offense. Dann engaged in a conspiracy to distribute methamphetamine for at least one year and received several pounds of methamphetamine per week from his supplier. PSR at 8-14. The Court found that although Dann did not receive a considerable amount of money from his participation in the operation, Dann did not play a minor role in the operation. ECF No. 266 at 14. Dann was involved in the planning, organizing, and decision-making of the distribution of the methamphetamine that was passed and delivered to him. *Id.* Furthermore, although the underlying drug offense is nonviolent, trafficking drugs is a serious offense and harms communities by introducing a controlled substance into those communities, disregarding the health and safety of others as well as the law.

The Government argues that the Court should deny Dann's release on the basis that, as of September 2020, he had only served 64 months of his 120 months sentence, especially considering Dann already received a large variance in his sentence. ECF No. 274 at 11. The Court agrees and believes the 120-month sentence was appropriate and both reflects the severity of the offense and serves the purposes of sentencing and policy goals. Reducing Dann's sentence to time served would not reflect the seriousness of the underlying offense and the role that Dann played in the operation and create an unacceptable disparity among similarly-situated defendants.

Ultimately, the Court finds the fact that Dann did not play a minor role in the drug distribution conspiracy and the fact that Dann has already received a large variance in his sentence weigh heavily against granting his motion for compassionate release. Accordingly, the Court finds that Dann has not shown his release would be consistent with the sentencing factors set forth in Section 3553, and thus has not demonstrated he is eligible for reduction or modification of his sentence.

### III.   CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c) is **DENIED.**

Dated:  November 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge